No. 20-603

United States Court of Appeals
Tenth Circuit

_____

In re EPIPEN (EPINEPHRINE INJECTION, USP)
MARKETING, SALES PRACTICES AND ANTITRUST LITIGATION

_____

On Petition to Appeal from the
United States District Court for the District of Kansas
District Court Judge Daniel D. Crabtree
Magistrate Judge Teresa J. James
Case No. 2:17-MD-2785-DDC-TJJ (MDL No. 2785)

_____

**CLASS PLAINTIFFS' ANSWER TO PETITION FOR
PERMISSION TO APPEAL PURSUANT TO FED. R. CIV. P. 23(f)**

_____

Warren T. Burns
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, TX 75202
469-904-4550
wburns@burnscharest.com

Elizabeth Pritzker
PRITZKER LEVINE LLP
1900 Powell Street, Suite 450
Emeryville, CA 94608
415-692-0772
ecp@pritzkerlevine.com

Lynn Lincoln Sarko
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101
206-623-1900
lsarko@kellerrohrback.com

Rex A. Sharp
SHARP BARTON, LLP
5301 W. 75th Street
Prairie Village, KS 66208
913-901-0500
rex@sharpbarton.com

Paul J. Geller
ROBBINS GELLER RUDMAN & DOWD
LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
561-750-3000
pgeller@rgrdlaw.com

*Lead Counsel for Class Plaintiffs*

March 23, 2020

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Class Plaintiffs disclose that named Plaintiff-Respondent Local 282 Welfare Trust Fund is a non-governmental corporate party, has no parent corporation, and no publicly held corporation owns ten percent or more of its stock.

All other named Plaintiff-Respondents are individuals and not non-governmental corporate parties.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................. i

TABLE OF AUTHORITIES .................................................................. iv

INTRODUCTION ............................................................................. 1

STATEMENT OF FACTS ..................................................................... 2

STANDARD OF REVIEW ................................................................... 4

ARGUMENT ..................................................................................... 6

I.      The District Court's Order Is Not the "Death Knell" for
        Defendants ......................................................................... 6

II.     The District Court's Order Does Not Present Any Significant
        Issues Likely to Evade End-of-Case Review .................................... 7

        A.      The Court Should (Again) Decline to Address the
                Minor Circuit Split on Ascertainability ................................. 7

        B.      The Court Should (Again) Decline to Review Its
                Position on a Purported Circuit Split Regarding
                Uninjured Class Members ................................................. 10

III.    The District Court's Order Does Not Constitute Manifest
        Error .................................................................................. 14

        A.      The District Court's Application of the Rule 23
                Standards Does Not Constitute Manifest Error ................... 15

                1.      The District Court Set Forth and Applied the
                        Correct Standard ............................................. 15

                2.      The District Court Did Not Violate the Rules
                        Enabling Act ................................................... 19

        B.      The District Court Did Not Commit Manifest Error on
                RICO Causation ............................................................ 20

      1.    The District Court Properly Followed Tenth Circuit Law ................................................ 21

      2.    Defendants Misread the District Court's Holdings on Reliance ................................................ 22

      3.    Defendants Distort The Two-Pack Component of the Scheme to Defraud. ............................... 24

CONCLUSION ..................................................... 25

CERTIFICATE OF COMPLIANCE ........................... 28

CERTIFICATE OF SUBMISSION ............................ 29

CERTIFICATE OF SERVICE ................................. 30

# TABLE OF AUTHORITIES

## CASES

*Aetna v. Pfizer*,
    712 F.3d 51 (1st Cir. 2013), *cert. denied*,
    134 S. Ct. 786 (2013) ..................................................................... 21

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds.*,
    568 U.S. 455 (2013) ......................................................................... 18

*Apache Corp. v. Rhea*,
    No. 19-602 (10th Cir. July 16, 2019), *cert. denied*,
    140 S. Ct. 906 (2020) ............................................................. 5, 8, 11

*Brecher v. Republic of Argentina*,
    806 F.3d 22 (2d Cir. 2015)............................................................. 10

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir.), *cert denied*, 138 S. Ct. 313 (2017) ....... 8, 9

*Brown v. Electrolux Home Prods., Inc.*,
    817 F.3d 1225 (11th Cir. 2016) ..................................................... 18

*C.R. England, Inc. v. Roberts*,
    No. 17-600, 2017 WL 3611971 (10th Cir. Mar. 27, 2017)............... 5

*CGC Holding Co. v. Broad & Cassel*,
    773 F.3d 1076 (10th Cir. 2014) .................................... 16, 19, 21, 23

*City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*,
    867 F.3d 434 (3d Cir. 2017).............................................................. 9

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) .................................................................... 15, 16

*Downes v. Rivera*,
    No. 15-705, 2015 WL 9022001 (10th Cir. Dec. 8, 2015) ............. 5, 6

*Harden Manuf. Corp. v. Pfizer,*
    712 F.3d 60 (1st Cir. 2013)....................................................... 22, 24

*Hitch Enterp., Inc. v. Oxy USA Inc.*,
     No. 19-609 (10th Cir. Feb. 10, 2020) ................................................ 5

*In re Asacol Antitrust Litig.*,
     907 F.3d 42 (1st Cir. 2018)................................................ 11, 13, 14

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
     915 F.3d 1 (1st Cir. 2019)................................................................ 13

*In re Nexium Antitrust Litig.*,
     777 F.3d 9 (1st Cir. 2015)................................................................ 11

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
     725 F.3d 244 (D.C. Cir. 2013) ......................................................... 12

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
     934 F.3d 619 (D.C. Cir. 2019) .................................................... 12, 14

*In re Syngenta AG MIR 162 Litig.*,
     No. 16-607 (10th Cir. Dec. 7, 2016) ....................................... *passim*

*In re Urethane Antitrust Litig.*,
     No. 14-1616-JWL, 2013 WL 2097346 (D. Kan. May 15,
     2013), *aff'd.* 768 F.3d 1245 (10th Cir. 2014) ............................ 12, 21

*Menocal v. GEO Grp., Inc.*,
     882 F.3d 905 (10th Cir. 2018) ......................................................... 23

*Messner v. Northshore Univ. Health Sys.*,
     669 F.3d 802 (7th Cir. 2012) .......................................................... 11

*Ocwen Loan Servicing, LLC v. Belcher*,
     No. 18-90011, 2018 WL 3198552 (11th Cir. June 29, 2018) ..... 9, 10

*Reedy v. Werholtz*,
     660 F.3d 1270 (10th Cir. 2011) ................................................... 6, 17

*Rikos v. Procter & Gamble Co.*,
     799 F.3d 497 (6th Cir. 2015), *cert. denied*,
     136 S. Ct. 1493 (2016) ...................................................................... 9

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,
     821 F.3d 992 (8th Cir. 2016) ............................................................ 8

*Sergeants Benv. Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*,
    806 F.3d 71 (2d Cir. 2015) ............................................................... 22

*Sidney Hillman Health Ctr. of Rochester v. Abbott Laboratories*,
    873 F.3d 574 (7th Cir. 2017) ........................................................... 22

*Sunoco, Inc. v. Cline*,
    No. 19-608 (10th Cir. Nov. 13, 2019) ........................................... 5, 8

*Vallario v. Vandehey,*
    554 F.3d 1259 (10th Cir. 2009) ......................................... 5, 6, 14, 24

*Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*,
    725 F.3d 1213 (10th Cir. 2013) ....................................................... 15

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................... 15, 16, 19

**RULES**

Fed. R. App. P. 32(a)(5) ......................................................................... 28

Fed. R. App. P. 32(a)(6) ......................................................................... 28

Fed. R. App. P. 32(f) .............................................................................. 28

Fed. R. App. P. 5(b)(1)(E) ...................................................................... 28

Fed. R. App. P. 5(c) ............................................................................... 28

Fed. R. Civ. P. 12(b)(6) .......................................................................... 22

Fed. R. Civ. P. 23 ......................................................................... *passim*

Fed. R. Civ. P. 23(b)(3) ..................................................................... 4, 19

Fed. R. Civ. P. 23(f) ...................................................................... *passim*

## INTRODUCTION

In a well-reasoned decision focused on this Court's precedent, the MDL district court (Crabtree, J.) certified two classes of EpiPen purchasers to pursue claims against the makers and distributors of the EpiPen. Petitioners—the Mylan Defendants, the Pfizer Defendants, and Heather Bresch ("Defendants")[1]—seek interlocutory review of that order under Rule 23(f). But they meet none of the grounds on which such exceptional relief may be granted.

First, Defendants do not, and cannot, claim that this order represents a "death knell" for them. Second, while they claim there are unresolved circuit splits, Defendants do not show how those issues will evade end-of-case review. Moreover, this Court and the Supreme Court have repeatedly declined to address these issues on Rule 23(f) petitions and the district court's decision rests solidly on prior precedent. Third, Defendants' argument that the district court erred does not show *manifest* error. To the contrary, the district court's well-reasoned decision followed extensive class certification and *Daubert* briefing,

---

[1] "Add." refers to the addendum to the Petition ("Pet.") filed by Defendants. In this brief, citations, internal quotations, and footnotes are omitted and emphasis added unless otherwise noted.

extensive evidentiary submissions, and back-to-back hearing days. Immediate substantive review of that decision is not required.

For these reasons, this Court should deny the petition and allow the case to proceed, especially as the parties have essentially completed discovery and are readying for summary judgment and trial. Defendants will get their appeal as of right in due course.

## STATEMENT OF FACTS

For Americans at risk of experiencing anaphylaxis—a potentially deadly allergic reaction in which the body goes into a state of shock—access to an epinephrine auto injector ("EAI") can be a matter of life and death. The only recommended first-line treatment for anaphylaxis is epinephrine. An EAI device, in short, is life-saving medication.

The EpiPen dominates the U.S. EAI market. Defendants collectively manufacture and market the EpiPen in the United States. At all relevant times, EpiPen's share of the U.S. EAI market ranged from 80% to nearly 100%. Add. 5. In 2007, when Mylan acquired the right to market the EpiPen in the U.S., it cost around $100. ECF 1500 (Memorandum in Support of Class Certification) at 7. Beginning no later than 2011, Defendants' unlawful conduct allowed them to ratchet up the

price of the EpiPen—a two-pack now costs more than $600. *Id.*
Notwithstanding Defendants' price hikes, the cost of a dose of
epinephrine has remained about the same—roughly $1—and the EpiPen
has changed little since its invention in the 1970s. *Id.* at 3–4.

Plaintiffs, consumers and third-party payors ("TPPs"), allege that
Defendants illegally maintained and exploited their dominant position in
the EAI market by: (1) entering into pay-for-delay settlements to forestall
generic competition; (2) entering into exclusive contracts with pharmacy
benefit managers ("PBMs") to block competitors from the market; and (3)
using false pretenses to increase EpiPen sales by removing single
EpiPens from the U.S. market and selling the device only as a package of
two. Add. 5–10.

In December 2018, after two years of extensive fact discovery,
Plaintiffs moved to certify multiple classes. ECF 1353. Plaintiffs' motion
was supported by the reports of four experts: Dr. Meredith Rosenthal,
Professor of Health Economics and Policy at Harvard; Professor Einer
Elhauge of Harvard Law School; Dr. Jay Portnoy, Professor of Pediatrics
at the University of Missouri School of Medicine; and Professor Andrew
Torrance of the University of Kansas Law School. In total, the district

court considered 250 pages of briefing, 10 expert reports, and thousands of pages evidence and exhibits. ECF Nos. 1501–02, 1837. Upon Defendants' request, the district court also agreed to consider full *Daubert* motions at the class-certification stage, ECF 1532, and conducted a two-day class certification hearing.

In February 2020, the district court issued two orders: an 82-page order granting in part and denying in part the parties' *Daubert* motions, Add. 130–211, and a 129-page class certification order certifying nationwide Rule 23(b)(3) RICO and state antitrust classes, Add. 1–129. The district court also added two meaningful class exclusions. *Id.* at 18–19.

In sum, the district court's orders represent the result of many months' analysis informed by extensive briefing, documentary evidence, and expert reports; live expert testimony; and oral argument. Defendants now seek discretionary interlocutory appellate review under Federal Rule of Civil Procedure 23(f).

## STANDARD OF REVIEW

Interlocutory review under Rule 23(f) is "strongly disfavored," *Downes v. Rivera*, No. 15-705, 2015 WL 9022001, at *1 (10th Cir. Dec. 8,

4

2015), and is "the exception rather than the rule." *Vallario v. Vandehey,* 554 F.3d 1259, 1262 (10th Cir. 2009). This Court "exercise[s] restraint in accepting Rule 23(f) petitions and will not accept such petitions as a matter of course." *Id.* at 1262–63.[2]

As this Court recently confirmed (in a decision that survived a certiorari petition), review under Rule 23(f) is warranted if the order: (1) sounds the "death knell" for the petitioner; (2) implicates "'an unresolved issue of law relating to class actions ***that is likely to evade end-of-case*** review which is significant to the case at hand as well as to class action generally'"; or (3) is manifestly erroneous. *See Apache* Order, No. 19-602 (citing *Vallario,* 554 F.3d at 1263–64), *cert. denied,* 140 S. Ct. 906 (2020). Because every losing petitioner invokes the manifest error category, this Court does not use it to "micromanage" class actions, but, rather, only applies it if "the deficiencies of a certification order are both

---

[2] *See, e.g.*, *Hitch Enterp., Inc. v. Oxy USA Inc.*, No. 19-609 (10th Cir. Feb. 10, 2020) (denying petition to appeal decision denying class certification); *Sunoco, Inc. v. Cline*, No. 19-608 (10th Cir. Nov. 13, 2019) (denying petition to appeal decision granting class certification); *Apache Corp. v. Rhea*, No. 19-602 (10th Cir. July 16, 2019), *cert. denied*, 140 S. Ct. 906 (2020) (same); *C.R. England, Inc. v. Roberts*, No. 17-600, 2017 WL 3611971 (10th Cir. Mar. 27, 2017) (same); *In re Syngenta AG MIR 162 Litig.*, No. 16-607 (10th Cir. Dec. 7, 2016) (same).

*significant* and ***readily ascertainable***." *Vallario*, 554 F.3d at 1263–64.

As detailed below, none of the three narrow grounds for granting a Rule 23(f) petition apply to this case.

## ARGUMENT

### I.    The District Court's Order Is Not the "Death Knell" for Defendants

This Court has held that Rule 23(f) petitions may be granted in "death knell cases"—cases in which the order "is likely to force either a plaintiff or a defendant to resolve the case based on considerations independent of the merits." *Vallario*, 554 F.3d at 1263. Defendants here do not contend that the district court's order would sound their "death knell."[3] To the contrary, Defendants are well-capitalized and, given that discovery is essentially complete, have identified no unique pressure from the district court's order.[4] This Court has rejected Rule 23(f) petitions under such circumstances. *See, e.g.*, *Downes*, 2015 WL 9022001,

---

[3] Defendants have waived this argument by not raising it in their opening brief. *Reedy v. Werholtz*, 660 F.3d 1270, 1274–75 (10th Cir. 2011).

[4] Mylan's market capitalization is about $6.9 billion and Pfizer's is about $169.8 billion. *See* Yahoo Finance, https://finance.yahoo.com/quote/MYL/; https://finance.yahoo.com/quote/PFE?ltr=1.

at *2 (rejecting petitioners' argument that class certification order was "death knell" when plaintiffs sought over $1 billion in damages, which represented 84% of defendant's total net assets).

## II. The District Court's Order Does Not Present Any Significant Issues Likely to Evade End-of-Case Review

Defendants request permission to appeal in order to address two purported circuit splits. Pet. 10–16. But the issues they raise are not "likely to evade end-of-case review."[5] Indeed, this Court has already rejected petitions based on the same purported circuit splits. Defendants have thus identified no unresolved issue of law requiring immediate review.

### A. The Court Should (Again) Decline to Address the Minor Circuit Split on Ascertainability

Defendants request permission to appeal so that this Court can address a "circuit split" concerning class member ascertainability. Pet. 10. Defendants ask this Court to adopt a heightened standard that requires "Plaintiffs [to] show an administratively feasible mechanism for readily ascertaining class members *prior* to certification." *Id.* (emphasis

---

[5] Indeed, this case is already near the "end-of-case" because discovery is nearly complete and the parties are drafting summary judgment briefs.

7

in original). Interlocutory review is imperative, they nakedly insist, because this issue "arises frequently and is likely to escape end-of case review." *Id.* at 11–12.

This Court, however, has disagreed at least three times recently (including twice in 2019) by denying Rule 23(f) review in cases involving this precise ascertainability issue, ruling that "immediate review" is "not appropriate" because, among other things, the issue is not "likely to evade end-of-case review." *Sunoco,* No. 19-608, Order (Nov. 13, 2019); *accord Apache*, No. 19-602, Order (July 16, 2019) (same), *cert. denied* 2020 WL 129586, at *1 (U.S. 2020); *Syngenta*, No. 16-607, Order (Dec. 7, 2016). There is nothing unique about this case that warrants changing course now.

Moreover, the purported "circuit split" is not as pronounced as Defendants portray. Defendants neglect to mention that, in addition to the Second and Seventh Circuits, Pet. 10–11, the Sixth, Eighth, and Ninth Circuit have rejected the heightened ascertainability standard endorsed by the Third Circuit. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1127 (9th Cir.), *cert denied*, 138 S. Ct. 313 (2017); *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016);

8

*Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525–26 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1493 (2016). In *Briseno*, 844 F.3d at 1127, for example, the Ninth Circuit "conclude[d] that Rule 23's enumerated criteria already address the interests that motivated the Third Circuit and, therefore, that an independent administrative feasibility requirement is unnecessary."[6]

Against this backdrop, the district court simply predicted, based on the weight of authority, that this Court would not adopt the Third Circuit's minority view. Add. 24. Following the analysis in *Syngenta*, which this Court found "well-reasoned," the district court determined that ascertainability is satisfied under Rule 23 where the "class definition [is not] too vague, the class [is not] defined by subjective criteria, and the class [is not] defined in terms of success on the merits." *Id.* Defendants'

---

[6] Even the Third Circuit may have some misgivings, as one judge lamented the "unnecessary burden on low-value consumer class actions created by our circuit's adoption of a second ascertainability requirement," and suggested the Third Circuit should "reject[] this additional requirement." *See City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 443 (3d Cir. 2017) (Fuentes, J., concurring). And the Eleventh Circuit recently resisted calls "to address this [circuit] split in a published opinion." *See Ocwen Loan Servicing, LLC v. Belcher*, No. 18-90011, 2018 WL 3198552, at *3 (11th Cir. June 29, 2018).

disagreement with this standard, *id.*, or with the court's conclusion that Plaintiffs satisfied it, *id.* at 25, is not worthy of Rule 23(f) consideration.

In any event, interlocutory review is also unwarranted given the district court's other finding that "even under a heightened ascertainability standard, plaintiffs have identified a viable method for identifying members of the classes." Add. 25–26 n.15.[7] In other words, resolving the question presented "would be of no consequence to this case." *See Ocwen Loan Servicing*, 2018 WL 3198552, at *3.

## B.    The Court Should (Again) Decline to Review Its Position on a Purported Circuit Split Regarding Uninjured Class Members

Similarly, interlocutory review on the potential presence of uninjured class members is not likely to evade end-of-case review. The district court's decision analyzed and followed this Court's earlier decisions—including ones denying Rule 23(f) petitions on the same basis. And, in any event, this case is a poor vehicle to review the issue.

---

[7] Besides, the heightened ascertainability standard only requires an administratively feasible ***method*** to later identify class members; it does not mean that plaintiffs must identify each class member at the class certification stage. *See Brecher v. Republic of Argentina*, 806 F.3d 22, 25 (2d Cir. 2015) ("Of course, 'identifiable' does not mean 'identified'; ascertainability does not require a complete list of class members at the certification stage."). The district court found "Prof. Rosenthal supplies a reasonably reliable and plausible method for identifying putative class members." Add. 25–26 n.15.

First, this Court has already considered and rejected Defendants'
argument that this circuit split justifies granting a Rule 23(f) petition in
*Apache*.[8] Order, No. 19-602 (10th Cir. July 16, 2019). There, the
petitioner argued that immediate review was appropriate because a
"class action cannot be certified where the class definition includes
individuals who could not have been harmed by the defendant's allegedly
unlawful actions." *Apache*, No. 19-602, Doc. 010110170802, at *17. These
are essentially the same arguments Defendants make here. *See* Pet. 13–
16. Further, as noted above, the Supreme Court denied review of this
Court's *Apache* decision just two months ago. 140 S. Ct. 906 (2020). There
is no reason to change course now.

Second, immediate review is not required because the district court
performed a rigorous analysis of the relevant case law and applied settled
precedent in rejecting Defendants' argument. Add. 59–67. It analyzed
cases both from this circuit and other circuits—devoting eight pages of
analysis to the issue. *Id.* (reviewing *In re Asacol Antitrust Litig.*, 907 F.3d
42 (1st Cir. 2018); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725

---

[8] Defendants overstate the split. *See*, *e.g.*, *Messner v. Northshore Univ.
Health Sys.*, 669 F.3d 802, 823 (7th Cir. 2012); *In re Nexium Antitrust Litig.*,
777 F.3d 9, at 21 (1st Cir. 2015).

11

F.3d 244, 252 (D.C. Cir. 2013); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619, 623–24 (D.C. Cir. 2019); *In re Urethane Antitrust Litig.*, No. 14-1616-JWL, 2013 WL 2097346, at *1–2 (D. Kan. May 15, 2013), *aff'd*. 768 F.3d 1245, 1254–55 (10th Cir. 2014); and *Syngenta*, No. 14-md-2591-JWL, 2016 WL 5371856, at *2–3 (D. Kan. Sept. 26, 2016)).

The district court followed the lead of *Urethane* and *Syngenta* to find that the potential inclusion of some uninjured class members does not defeat certification. Add. 62–63. In *Urethane*, the district court determined that "a class will almost inevitably include persons who have not been injured by the defendant's conduct, and that fact (or even inevitability) does not preclude certification." 2013 WL 2097346, at *1–2. Rather, the district court held, a class is too broad only if it includes a "great number" of uninjured members. Add. 63. This Court affirmed the certification order, holding that the plaintiffs satisfied the predominance standard even though "some plaintiffs may have successfully avoided damages." 768 F.3d 1245, 1254–55 (10th Cir. 2014).

Similarly, in *Syngenta*, the district court held "the possibility or even inevitability that the class will include members not injured by the

12

defendant's conduct does not preclude class certification." 2016 WL 5371856, at *2–3. Again, this Court approved of the decision. Doc. 01019731851, at *3 (10th Cir. Dec. 7, 2016) (concluding the "district court's rulings in the order granting class certification are well-researched and reasoned."). The district court here expressly followed this same analysis in its order.

Third, even if this Court were to revisit its precedent on the issue, this case is a poor vehicle to do so because the district court found that Plaintiffs can prove class-wide injury in ways that would still satisfy the flawed *Asacol* standard. Based on Dr. Rosenthal's probability analysis— which the First Circuit accepted post-*Asacol*, *see In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 915 F.3d 1, 12–13 (1st Cir. 2019)—the district court determined that the likelihood that a TPP or individual would not suffer monetary damages was *de minimis*.[9] Add. 67–76.

---

[9] The Court explained, "Prof. Rosenthal estimates that the likelihood that a third-party payor who covered as few as five prescriptions sustained injury from generic delay is 99.999% or better," "the likelihood that a third-party payor who reimbursed at least 10 patients for EpiPens was injured by Mylan's switch to the 2-Pak is 99%," "the likelihood that individual consumers sustained injury from generic delay or Mylan's switch to the 2-Pak is about 95%," and "all third-party payors and all cash payor consumers sustained injury from brand foreclosure." Add. 68.

13

The district court also considered and rejected Defendants'
argument that the determination of uninjured class members should
turn on an absolute number instead of a percentage.[10] Add. 74–75.
Neither *Asacol* nor *Rail Freight* held that the touchstone was the
**number** of plaintiffs uninjured. *See Asacol*, 907 F.3d at 57–58 (10% of
class members were uninjured); *Rail Freight II*, 934 F.3d at 623–24
(12.7% of class members were uninjured). Indeed, it would not make
sense to use absolute numbers as a yardstick. If absolute numbers
controlled, class certification would be less likely as the number of people
impacted by Defendants' conduct increased.

## III.  The District Court's Order Does Not Constitute Manifest Error

This Court does not use "manifest error" to "micromanage" class
actions and invokes it only where "the deficiencies of a certification order
are both **significant** and **readily ascertainable**." *Vallario*, 554 F.3d at
1263–64. None of Defendants' complaints about the district court's order
rise to this standard.

---

[10]  Defendants speculate that there may be 100,000 uninjured class
members, but offered no evidence in support.

14

A.    **The District Court's Application of the Rule 23 Standards Does Not Constitute Manifest Error**

1.    **The District Court Set Forth and Applied the Correct Standard**

Established precedent requires the district court to perform a "rigorous analysis" of the Rule 23 factors, which "[o]ften . . . requires looking at the merits of a plaintiff's claims." *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)). The district court articulated and applied this standard, Add. 13–15, recognizing that "district courts must conduct a 'rigorous analysis' and decide whether the putative class satisfies the requirements of Federal Rule of Civil Procedure 23." Add. 14 (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) and *Wal-Mart*, 564 U.S. at 350–51). It recognized Plaintiffs "bear the burden" of showing Rule 23 compliance. Add. 14. And, quoting this Court, the district court noted that it could not "blindly rely on conclusory allegations" but could "probe behind the pleadings" to "examine the facts and evidence in the case." Add. 14.

Ignoring the district court's rigorous analysis, Defendants incorrectly assert that "the District Court applied the wrong baseline

15

standard." Pet. 6. The district court neither stated nor applied a "plausibility pleading standard." Instead, it rigorously analyzed each Rule 23 requirement in an extensive 129-page order and accompanying 82-page order on related *Daubert* motions. Add. 1–211. Far from relying on the pleadings, the court weighed hundreds of pages of briefing, considered thousands of pages of evidence from both Plaintiffs and Defendants, reviewed testimony by multiple experts, and held two days of hearings. When evaluating this evidence, the district court repeatedly confirmed that it was using the applicable standards throughout its order. Add. 48, 51, 103–105, 173–74 (applying *Comcast*'s standards); Add. 28, 30, 91, 124 n.70, 132 (applying *Wal-Mart*'s standards); *see also* Add. 45–56, 79–80, 82, 93–95 (applying standards explained in *CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076 (10th Cir. 2014)).

The district court also took a "hard look" at the expert evidence, applying "the *Daubert* standard" to the experts' opinions "to determine whether the court should consider them at the class certification stage." Add. 133; *see also* Add. 37 n.21.[11] While Plaintiffs did not believe a full

---

[11] The district court applied the same rigorous *Daubert* standard applied by many circuit courts—not merely one district court opinion, contrary to

*Daubert* analysis was required, the district court **sided with Defendants** and performed the requested analysis. Add. 132–33. The district court did use the word "plausible" or "plausibly" in discussions of expert methodologies, but it extensively examined these methodologies and determined that they met the standard for use at class certification. *See* Add. 150–211; *see also* Add. 25–26 n.15 (carefully considering expert's methodology). In any event, Defendants did not argue below, and have therefore waived, the argument that reliability under Rule 23 is somehow a "higher standard" than reliability under *Daubert. See Reedy,* 660 F.3d at 1274–75. Before the district court, Defendants demanded application of the rigorous *Daubert* standard and cannot now ask for something else.

Defendants also assert that the district court "did not 'actually decide' the disputed factual issues on which class certification turns[.]" Pet. 10. Defendants again misread the district court's careful opinion. Quoting Supreme Court precedent, the district court acknowledged, "merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23

Defendants' assertion. Add. 132–33 (following Third, Sixth, Seventh, Eighth, and Eleventh Circuit precedents).

prerequisites for class certification are satisfied." Add. 15. Defendants'
cited authority recognizes this limit on the court's rigorous analysis. *See
Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir.
2016). As the district court emphasized, Add. 52, Defendants will have
later opportunities to test Plaintiffs' evidence on the merits. *See Amgen
Inc. v. Conn. Ret. Plans & Tr. Funds.*, 568 U.S. 455, 468–69 (2013) (at
class certification stage, plaintiffs "need not . . . prove that the
predominating question will be answered in their favor").

The district court properly limited its analysis at class certification
to the Rule 23 elements. As the Supreme Court advised in *Amgen*, 568
U.S. at 466, "Rule 23 grants courts no license to engage in free-ranging
merits inquiries at the certification stage." Yet that is precisely what
Defendants advocate here, pointing to a single order from an out-of-
circuit district court. Pet. 8 (citing *In re Rail Freight*, 292 F. Supp. 3d at
42–43, 91).

In sum, Defendants cannot contrive "manifest error" by cherry-
picking a 129-page order for use of the word "plausible," and then taking
that language out of context in the face of the district court's "rigorous

analysis" of the Rule 23 factors and the evidence to determine that Plaintiffs met those factors.

### 2. The District Court Did Not Violate the Rules Enabling Act

Citing only one case, Defendants assert not that courts must independently certify each ***cause of action*** (RICO and antirust) under Rule 23(b)(3) predominance, but rather each ***factual theory***. Pet. 17 (citing *Wal-Mart,* 564 U.S. 367). *Wal-Mart* says nothing close to this. *Wal-Mart* was not a Rule 23(b)(3) case and Defendants cite no other case law because none exists. Defendants' Rules Enabling Act argument is not only hard to follow, they conjure it out of thin air. It also falls short of this Court's Rule 23(f) standards.

The district court properly analyzed the causes of action, element by element, to ensure predominance was met. Under Tenth Circuit law, the analysis of predominance in a class action "begins, of course, with the ***elements*** of the underlying ***cause of action***." *CGC Holding*, 773 F.3d at 1088.

The district court specifically analyzed the generic delay, two-pack, and brand foreclosure factual theories as a whole because they form a complete cause of action, and because every named Plaintiff sustained an

19

injury pursuant to one of these bad acts. Add. 36–40. The district court later analyzed and accepted Plaintiffs' expert's conclusion, at least for class certification, that the high likelihood that consumers sustained injury from these theories meant there were few, ***if any***, uninjured class members. *Id*. at 68; *see also* Add. 84–90, 95–102 (addressing the factual theories supporting the causation element and damages).

In sum, this Court should reject Defendants' Rules Enabling Act argument.

### B.     The District Court Did Not Commit Manifest Error on RICO Causation

Clawing for Rule 23(f) review, Defendants misstate and oversimplify numerous rulings made by the district court in its 30-page analysis of RICO causation to claim error that is significant and readily ascertainable.[12] Add. 79–102. Plaintiffs' RICO claim focuses entirely on Defendants' conduct: the RICO association-in-fact enterprise involving Mylan, its CEO, Heather Bresch, Pfizer, and PBMs; the pattern of racketeering committed by Defendants to eliminate brand and generic

---

[12] Contrary to Defendants' footnote 9, Plaintiffs offered multiple experts on RICO causation, as noted by the district court. *See* Add. 84–85, 90–91, 95–96.

competition and the single pack sales so they could raise the price of the EpiPen; and the resulting damages. Add. 80–81. This EpiPen pricing scheme is the common "glue" showing that the RICO claim can be resolved "'in one stroke.'" *Urethane*, 768 F.3d at 1253.

Defendants attempt an improper divide-and-conquer tactic rather than confront the totality of the scheme to defraud, including the generic delay, single pack withdrawal, and elimination of brand competition together. Add. 84. Attacking only causation, Defendants fail to show how that element predominates over the elements of the entire civil RICO claim. And Defendants fail to show how any possible error constitutes "manifest error" warranting interlocutory review.

## 1. The District Court Properly Followed Tenth Circuit Law

The district court properly considered pharmaceutical RICO decisions from the First, Third, and Ninth Circuits. Add. 96–102. Critically, the Tenth Circuit's only RICO class certification decision, *CGC Holding*, relied on the same First Circuit authority the district court cited, *Aetna v. Pfizer*, 712 F.3d 51 (1st Cir. 2013), *cert. denied*, 134 S. Ct. 786 (2013). Another First Circuit RICO decision, *Harden Manuf. Corp. v.*

21

*Pfizer,* 712 F.3d 60, (1st Cir. 2013), was a TPP class action. As a result, the district court correctly looked to First Circuit law. Add. 96–97 & n.49.

Defendants fault the district court for not following RICO case law from the Second and Seventh Circuits. But neither case is apposite. In *Sergeants Benv. Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 95–96 (2d Cir. 2015), the court held that the "simplistic nature" of the evidence presented "distinguish[ed]" the case "from the First Circuit's decision" on RICO causation. *Id.* at 96. Here, the district court explained exactly why this case solved those problems, through an advanced analysis of causation. *See* Add. 101–02 n.50. And *Sidney Hillman Health Ctr. of Rochester v. Abbott Laboratories*, 873 F.3d 574 (7th Cir. 2017), was dismissed at the Rule 12(b)(6) stage. Further, while the *Sidney Hillman* class included TPPs, *id.* at 576, here the class includes TPPs and consumers. Far from committing "manifest error," the district court aligned its analysis with the most pertinent authority on the questions before it.

## 2. Defendants Misread the District Court's Holdings on Reliance

Defendants also misstate the district court's rulings on Plaintiffs' inference-of-reliance theory. The district court did not conclude that

RICO causation could be shown by inference alone. Rather, based on an extensive record, it determined that Plaintiffs could prove reliance using class-wide evidence. Add. 94–95. This decision was grounded in *CGC Holding*, 773 F.3d at 1089–91, which held that an inference of reliance can be "sufficient to present a predominating question related to class member reliance." The district court applied *CGC Holding* to this case, emphasizing that the "fraudulent omissions" of the scheme to defraud were class-wide. The district court concluded that Plaintiffs could prove reliance by class-wide evidence, and that Defendants' arguments went to the merits. Add. 93–95 & n.47; *see CGC Holding*, 773 F.3d at 1091 n.9. And the basis for inferring reliance is stronger here than in *CGC Holding* because consumers and TPPs had no other choice but to rely on the scheme to defraud, given that epinephrine is a life-saving medicine and that the scheme to defraud eliminated competition to the EpiPen and consumer choice. Finally, Defendants concede the district court's independent "group coercion" causation ruling under this Court's decision in *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 922 n.13 (10th Cir. 2018).

There was ample evidence supporting the district court's ruling, including expert testimony. Add. 84–87, 90–91, 95–96. Rather than committing "manifest error," the district court properly declined to reach Defendants' "merits-based defenses" to these arguments at this stage. Add. 93–94. *See also Harden*, 712 F.3d at 67 (explaining that the RICO causation challenge "presents a question of proof, to be resolved at trial").

### 3.    Defendants Distort The Two-Pack Component of the Scheme to Defraud.

Lastly, Defendants focus on the two-pack component of the scheme—ignoring the totality of the scheme (including generic delay and foreclosed branded competition)—to argue the district court erred in certifying the RICO class. But the voluminous evidentiary record the district court scrutinized supports the opposite conclusion. Add. 84–90. At most, Defendants point to a dispute between experts—a classic merits issue that is not appropriate for determination at this stage. Defendants' argument represents the sort of micromanagement of class actions that this Circuit has explicitly rejected. *Vallario*, 554 F.3d at 1264.

First, the exclusive two-pack scheme is "but one of the factual theories plaintiffs rely on to support their RICO claim." Add. 88. Plaintiffs' experts show that, when all three factual theories are included,

24

the probability that any class member was not injured by Defendants' scheme is also *de minimis*. Add. 68.

Second, focusing exclusively on one part of the scheme, Defendants only address the individual consumers affected by the single pack withdrawal, yet the class includes consumers ***and*** TPPs. Plaintiffs' experts showed that the chance a TPP would be unaffected by the single pack withdrawal was infinitesimal. *Id.* at 68. And, as discussed above at Section II.B, the First Circuit (post-*Asacol*) has credited the analysis of Plaintiffs' expert on TPP injury on this exact issue. Add 70–71.

Third, the district court advised that it may "modify" the class to "preclude plaintiffs from using the 2-Pak theory" if the evidence later warranted that exclusion. Add. 89. Thus, Rule 23(f) review would be premature.

## CONCLUSION

Given the high standard for Rule 23(f) review, and the district court's rigorous analysis and well-reasoned class certification order, the petition for immediate interlocutory review should be denied. Review should proceed in the regular course at the end of the case.

Dated:      March 23, 2020
            Dallas, Texas              Respectfully submitted,

                                       BURNS CHAREST LLP

                                       /s/ Warren T. Burns
                                       Warren T. Burns
                                       Spencer M. Cox
                                       900 Jackson Street, Suite 500
                                       Dallas, TX 75202
                                       Telephone: 469/904-4550

                                       SHARP BARTON, LLP
                                       Rex A. Sharp
                                       Ryan C. Hudson
                                       5301 W. 75th Street
                                       Prairie Village, KS 66208
                                       Telephone: 913/901-0505

                                       ROBBINS GELLER RUDMAN
                                       & DOWD LLP
                                       Paul J. Geller
                                       Stuart A. Davidson
                                       120 East Palmetto Park Road,
                                       Suite 500 Boca Raton, FL 33432
                                       Telephone: 561/750-3000

                                       KELLER ROHRBACK L.L.P.
                                       Lynn L. Sarko
                                       Gretchen Freeman Cappio
                                       1201 Third Avenue, Suite 3200
                                       Seattle, WA 98101
                                       Telephone: 206/623-1900

PRITZKER LEVINE LLP
Elizabeth C. Pritzker
Jonathan K. Levine
1900 Powell Street, Suite 450
Emeryville, CA 94608
Telephone: 415-692-0772

*Co-Lead Counsel for Class Plaintiffs*

BOIES SCHILLER FLEXNER LLP
Damien J. Marshall
Duane L. Loft
Matthew S. Tripolitsiotis
55 Hudson Yards, 20th Floor
New York, NY 10001
212-446-2300

*On the Brief*

## CERTIFICATE OF COMPLIANCE

This answer complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c) because it contains 5,027 words, excluding the parts of the petition exempted by Federal Rules of Appellate Procedure 5(b)(1)(E) and 32(f).

This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in Century Schoolbook 14-point font.

/s/ Warren T. Burns
Warren T. Burns
*Co-Lead Counsel for Class Plaintiffs*

## CERTIFICATE OF SUBMISSION

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) the digital submissions submitted in Digital Form via the court's ECF system is an exact copy of the written document filed with the Clerk and has been scanned for viruses with the most recent version of a commercial virus scanning program (Bit Defender, version 6.6.6.84, which is updated daily) and, according to the program, is free of viruses.

/s/ Warren T. Burns
_____
Warren T. Burns
*Co-Lead Counsel for Class Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that this document was electronically filed on March 23, 2020, with the Clerk of the Court by using the ECF system. I further certify that on March 23, 2020, a true and correct copy, including any attachment(s), was sent via electronic mail to:

RAJ S. GANDESHA
STEVEN LEVY
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200
rgandesha@whitecase.com

JOSEPH REBEIN
ELISABETH A. HUTCHINSON
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, MO 64108-2613
(816) 474-6550
jrebein@shb.com
*Counsel for Pfizer Petitioners*

CATHERINE E. STETSON
ADAM K. LEVIN
DAVID M. FOSTER
CAROLYN A. DELONE
KATHRYN M. ALI
KATHERINE B.WELLINGTON
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
cate.stetson@hoganlovells.com

BRIAN FRIES
LATHROP GPM
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108-2618
(816) 292-2000
brian.fries@lathropgpm.com

*Counsel for Mylan Petitioners*

Phillip A. Sechler
ROBBINS, RUSSELL,
ENGLERT, ORSECK
UNTEREINER & SAUBER LLP
2000 K Street NW, 4th Floor
Washington, D.C. 20006
(202) 775-4492
psechler@robbinsrussell.com

*Liaison Counsel for
Petitioners/Defendants*

/s/ Warren T. Burns
Warren T. Burns
*Co-Lead Counsel for Class Plaintiffs*