# EXHIBIT A

No. 20-603

In The

# United States Court of Appeals
## for the Tenth Circuit

———————————

In re EPIPEN (EPINEPHRINE INJECTION, USP) MARKETING, SALES PRACTICES AND ANTITRUST LITIGATION

———————————

On Petition to Appeal from the
United States District Court for the District of Kansas
District Court Judge Daniel D. Crabtree, Magistrate Judge Teresa J. James
Case No. 2:17-MD-2785-DDC-TJJ (MDL No. 2785)

———————————

**REPLY IN SUPPORT OF PETITION FOR PERMISSION TO APPEAL PURSUANT TO FED. R. CIV. P. 23(f)**

———————————

RAJ S. GANDESHA
STEVEN LEVY
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200
rgandesha@whitecase.com

JOSEPH REBEIN
ELISABETH A. HUTCHINSON
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, MO 64108-2613
(816) 474-6550
jrebein@shb.com

*Counsel for Pfizer Petitioners*

March 30, 2020

CATHERINE E. STETSON
ADAM K. LEVIN
DAVID M. FOSTER
CAROLYN A. DELONE
KATHRYN M. ALI
KATHERINE B. WELLINGTON
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
cate.stetson@hoganlovells.com

BRIAN FRIES
LATHROP GPM
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108-2618
(816) 292-2000
brian.fries@lathropgpm.com

*Counsel for Mylan Petitioners*

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES .......................................................... ii

INTRODUCTION ................................................................1

ARGUMENT ...................................................................3

   I.     REVIEW IS WARRANTED TO REVERSE THE
         DISTRICT COURT'S APPLICATION OF THE
         WRONG LEGAL STANDARD ...............................................3

   II.    REVIEW IS WARRANTED TO RESOLVE
         ACKNOWLEDGED INTER-CIRCUIT AND
         INTRA-CIRCUIT SPLITS.......................................................5

   III.   REVIEW IS WARRANTED TO CORRECT
         MULTIPLE MANIFEST ERRORS.........................................9

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY
REDACTION

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

## CASES:

*Carpenter v. Boeing Co.*,
  456 F.3d 1183 (10th Cir. 2006) ............................................................3

*CGC Holding Co. v. Broad & Cassel*,
  773 F.3d 1076 (10th Cir. 2014) ...........................................................9

*Ferreras v. Am. Airlines, Inc.*,
  946 F.3d 178 (3d Cir. 2019) .........................................................4, 11

*In re Asacol Antitrust Litig.*,
  907 F.3d 42 (1st Cir. 2018)............................................................5, 7

*In re Initial Pub. Offerings Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006) ...................................................................4

*In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*,
  725 F.3d 244 (D.C. Cir. 2013)...............................................................5

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001) ...............................................................12

*Payne v. Tri-State CareFlight, LLC*,
  332 F.R.D. 611 (D.N.M. 2019).............................................................3

*Szabo v. Bridgeport Machs., Inc.*,
  249 F.3d 672 (7th Cir. 2001) ...............................................................6

*Town of Chester v. Laroe Estates*,
  137 S. Ct. 1645 (2017).........................................................................11

*Vallario v. Vandehey*,
  554 F.3d 1259 (10th Cir. 2009) ............................................... 1-3, 7, 12

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)........................................................................4, 11

*Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*,
  725 F.3d 1213 (10th Cir. 2013) ...........................................................3

## TABLE OF AUTHORITIES—Continued

Page(s)

**RULES:**

Fed. R. Civ. P. 23 ................................................................. 3, 4, 9-11

Fed. R. Civ. P. 23(f) ...............................................................2, 3, 5, 8

Fed. R. Civ. P. 23(f) advisory committee's note .......................................5

**OTHER AUTHORITY:**

1 McLaughlin on Class Actions § 3:14 (16th ed. 2019)............................................4

No. 20-603

_____

IN THE

# United States Court of Appeals
# for the Tenth Circuit

_____

In re EPIPEN (EPINEPHRINE INJECTION, USP) MARKETING, SALES
PRACTICES AND ANTITRUST LITIGATION

_____

On Petition to Appeal from the
United States District Court for the District of Kansas
District Court Judge Daniel D. Crabtree, Magistrate Judge Teresa J. James
Case No. 2:17-MD-2785-DDC-TJJ (MDL No. 2785)

_____

**REPLY IN SUPPORT OF PETITION FOR PERMISSION TO APPEAL
PURSUANT TO FED. R. CIV. P. 23(f)**

_____

## INTRODUCTION

No other court has certified such a vast class that includes as many as millions of uninjured members without any way to identify and remove them from the class. Plaintiffs do not dispute that. Nor do they dispute that this petition raises numerous important issues of class action law that have divided district courts within this Circuit, remain unresolved, and are outcome-determinative. *See* Pet. 1-2. Any of those factors alone favors review. *See Vallario v. Vandehey*, 554 F.3d 1259, 1263-64 (10th Cir. 2009). Together, they cry out for it.

Plaintiffs contend that the petition should be denied because the District Court wrote a long opinion and generally followed District of Kansas precedent.

1

But the opinion was long because the court recited in detail the parties' positions on numerous unresolved "difficult issues," Add. 13, not because it correctly resolved those issues under settled law. *See* Order at 2, *GEO Grp., Inc. v. Menocal*, No. 17-701 (10th Cir. Apr. 11, 2017) (granting review given "complexity and difficulty of the issues"). And the district court precedent on which the court relied diverges from other courts in this Circuit and others. Plaintiffs' responses are thus reasons to *grant* review.

Rule 23(f)'s requirements are plainly met. The decision is premised on a "plausibility" pleadings standard, in conflict with courts in this Circuit and others. It resolves multiple circuit splits against Petitioners, often adopting a minority view contrary to other courts within this Circuit and other circuit courts. And it is manifestly erroneous. The court certified the classes without determining whether two of Plaintiffs' three theories of injury met the requirements for certification. And it certified a RICO class based on an "inference of reliance" that contravenes this Court's precedent.

Equally important, the sheer scale of this unprecedented ruling is likely to pressure Petitioners to resolve the case independent of the merits. *See* Pet. 6.[1] *Of course* this case is likely to evade end-of-case review: A class action with

---

[1] This is the "death knell" standard, *Vallario*, 554 F.3d at 1263, which Petitioners specified and did not waive. Pet. 6.

millions of members, purporting to seek "enormous" damages, creates significant pressure to settle regardless of the merits, particularly in this economic climate. *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1189 (10th Cir. 2006). That would leave multiple important questions unresolved in this Circuit without any avenue for appellate review, when many other circuits have addressed them.

This is the paradigmatic case for interlocutory review. The petition should be granted.

## ARGUMENT

## I. REVIEW IS WARRANTED TO REVERSE THE DISTRICT COURT'S APPLICATION OF THE WRONG LEGAL STANDARD.

In contrast with the "plausibility" standard the District Court used, five circuits—and other district courts in this Circuit—hold that Rule 23 must be satisfied by a preponderance of the evidence. Pet. 7-8; *see, e.g.*, *Payne v. Tri-State CareFlight, LLC*, 332 F.R.D. 611, 656-658 (D.N.M. 2019). Under Rule 23(f), there can be no error more manifest than applying the wrong baseline standard to every step of the class certification inquiry. *See Vallario*, 554 F.3d at 1267 (granting petition where district court applied wrong Rule 23 standard); *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1215, 1217-18 (10th Cir. 2013) (same).

Tellingly, Plaintiffs bury their response to the court's "plausibility" analysis deep in their brief. Plaintiffs assert (at 15-16) that when the court said

"plausible"—*twenty times*—it did not actually mean "plausible," because the court also quoted *Wal-Mart*'s "rigorous analysis" standard.  But mentioning the right standard is no antidote to applying the wrong one, and the court could not have been clearer about what standard it applied.  *See* Add. 114-115 ("Plaintiffs' experts have presented a plausible method . . . .  This suffices to establish predominance . . . ."); Add. 26 n.15, 37-38 & n.21, 39, 51, 52, 70, 71, 72 n.40, 79, 91 n.46, 101, 108, 110, 113 n.57.[2]  "[I]t was error for the District Court to leave unresolved conflicts in the evidence" that are crucial to certification.  *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 184 (3d Cir. 2019).

Plaintiffs' assertion (at 16-17) that the court properly applied the *Daubert* standard when evaluating *Rule 23*'s requirements underscores the manifest error.[3]  "A conclusion that proffered expert evidence is sufficiently reliable and relevant to pass *Daubert* muster does not end" the class certification inquiry.  1 McLaughlin on Class Actions § 3:14 (16th ed. 2019); *see In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006) (expert testimony cannot satisfy Rule 23 "simply by being not fatally flawed").  Review is needed to address the division among the courts and correct this manifest error.

_____

[2] It is irrelevant that the court did not rely only on the pleadings.  Pls.' Resp. 16.  Applying the wrong standard to a voluminous record does not cure that error.

[3] Plaintiffs' waiver argument is meritless.  Neither party asked the court to apply the *Daubert* standard to class certification under Rule 23.

## II.    REVIEW IS WARRANTED TO RESOLVE ACKNOWLEDGED INTER-CIRCUIT AND INTRA-CIRCUIT SPLITS.

The District Court decided three separate circuit splits against Petitioners based on "predictions" of how this Court would rule.  Each independently warrants review.

*First*, there is a clear circuit split concerning whether a class containing uninjured members who cannot be identified and removed may be certified.  *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 56 (1st Cir. 2018) (acknowledging "divergence" among circuits); Add. 67 ("predict[ing]" this Court would follow minority approach).  This is the kind of significant, unresolved question that Rule 23(f) is designed to address.  *See* Fed. R. Civ. P. 23(f) advisory committee's note (permission "most likely to be granted" when certification decision turns on "novel or unsettled question of law").  Multiple circuits have granted review on this question.  *See, e.g.*, *Asacol*, 907 F.3d at 47; *In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 252-253 (D.C. Cir. 2013).  The *Apache* petition Plaintiffs cite (at 11) raised a different question regarding the class definition and did not identify the deep circuit split.  *See* Pet. 17, *Apache Corp. v. Rhea*, No. 19-602 (10th Cir. May 17, 2019).

This issue also could not be more cleanly presented:  The undisputed record shows certified classes that contain *at least* 100,000 and as many as millions of uninjured members.  Pet. 3-4.  Neither Plaintiffs nor the District Court cited any

5

case certifying a class with that many uninjured members.  Plaintiffs discuss their expert's "probability analysis," but as the District Court acknowledged, even under that analysis, at least 100,000 class members are uninjured.  *See* Add. 72 n.41; Pls.' Mot. for Certification Reply, Ex. 97 at ¶ 60, ECF No. 1837-2 (calculating "midpoint probability" that class members are uninjured).  And this "probability analysis" is itself manifestly erroneous, because it allows certification based only on the *chance* that class members were injured, rather than evidence of actual injury—which is a required element of Plaintiffs' claims.  Pet. 16-17.[4]

Plaintiffs assert (at 11-12) that review is not required because the court followed "settled" District of Kansas precedent.  But that is a significant factor *favoring* review:  It is precisely because the District of Kansas has created its own "settled" precedent—without this Court's input, and at odds with *nearly every other circuit*—that intervention is needed.  *See Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) ("At critical junctures the district judge cited only decisions by other district judges, most in cases later settled and thus not

---

[4] Plaintiffs claim (at 14) that it is the percentage, rather than the number, of uninjured members that matters.  Plaintiffs themselves embrace the "great number" standard (at 12), and they do not explain how it would be possible to decide a case with at least 100,000 uninjured class members, who cannot be identified except through *millions* of mini-trials.  Pet. 16 n.8.

subject to appellate consideration.").[5]  If this Court does not grant the petition, this question will continue to evade review.  The Fifth Circuit addressed this issue in 2003; the Second Circuit in 2006; the Third Circuit in 2008; the Seventh Circuit in 2009; the Eighth Circuit in 2010; the D.C. Circuit in 2013; and the First Circuit in 2018.  Pet. 13-14.  This Court has not weighed in.  It should now.

*Second*, this Court's intervention is urgently needed to resolve an intra- *and* inter-circuit split on ascertainability.  Pet. 10-13.  The classes contain a great many members who are not only uninjured, but *cannot be identified*.  Plaintiffs do not address the divergence among this Circuit's district courts, but this is precisely the kind of "unresolved issue of law" "significant to the case at hand, as well as to class action cases generally" that warrants interlocutory review.  *Vallario*, 554 F.3d at 1263.  This is at least the third case in this Circuit in less than twelve months to raise this issue, with different lower courts applying starkly different standards. *See* Pet. 11 (listing cases); Pls.' Resp. 8.  Where a plaintiff files suit should not determine whether a class is certified.  The Federal Rules were designed to create uniformity and dissuade the type of forum shopping the District Court's order will provoke.

---

[5] Plaintiffs claim (at 13) that they can meet the First Circuit's standard, but that court *rejected* certification under similar facts, holding that a class containing uninjured consumer brand loyalists cannot be certified.  *See Asacol*, 907 F.3d at 54-55.

Despite many recent cases raising this issue, none has reached this Court on end-of-case review.  *See* Pls.' Resp. 8; *see also* Order, *Home Depot USA, Inc. v. Nieberding*, No. 14-604 (Oct. 10, 2014) (granting 23(f) petition raising ascertainability question, which settled prior to resolution by this Court).  Nor is this issue likely to return to the Court here, given the substantial settlement pressures created by certification.  This case is an ideal vehicle to address this important question.  Ascertainability is outcome-determinative:  Identifying class members would require obtaining records from at least 65,000 independent pharmacies—a task the court acknowledged "may prove overwhelming." Add. 165.  Contrary to Plaintiffs' contention (at 10) that the court nonetheless found the standard met, the court acknowledged the many problems with Plaintiffs' proposed method, stating merely that it was "plausible" that Plaintiffs *might* be able to ascertain class members through further discovery *after* certification.  Add. 26 n.15.  But ascertainability must be determined *before* certification.  *See* Pet. 12-13.

*Third*, the certification ruling raises a crucial legal issue in this case, and important to class actions generally, on which the circuits are divided:  Whether RICO causation can be shown through common proof despite the presence of intermediaries between the defendants' alleged conduct and the plaintiffs' alleged injury.  Plaintiffs do not contest that this is an important question, nor that a split

exists. *See* Pls.' Resp. 21-22. They instead claim that the split is not implicated, because the court "explained exactly why this case solved those problems, through an advanced analysis of causation." *Id.*

Not so. The opinion states that "the presence of intermediary players in the drug supply chain doesn't present individual causation issues that overwhelm common questions of RICO causation." Add. 101. That is the *opposite* conclusion from other circuits—as the court recognized (Add. 99)—warranting review. Pet. 19.

## III. REVIEW IS WARRANTED TO CORRECT MULTIPLE MANIFEST ERRORS.

The District Court's ruling that Plaintiffs could demonstrate RICO causation through an inference of reliance is directly contrary to Circuit precedent. This Court has held—and Plaintiffs do not dispute—that an inference of reliance is not "appropriate in most RICO class actions," and is permissible only where plaintiffs' behavior "cannot be explained in any way other than reliance upon the defendant's conduct." *CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076, 1089-91 & n.9 (10th Cir. 2014) (internal quotation marks omitted). That standard cannot be met here. Even named plaintiffs testified that their behavior was not affected by Petitioners' alleged conduct. Pet. 21. Yet the court held that Petitioners were not entitled to rebut an inference of reliance at the certification stage, regardless of the record. Add. 94-95. That is manifestly erroneous under *CGC Holding* and Rule

9

23; if there is no proper inference of reliance, there can be no classwide proof of reliance. Plaintiffs' only response (at 22-23) is to assert that the "district court did not conclude that RICO causation could be shown by inference alone." Wrong again. The court held, in no uncertain terms: "[P]laintiffs can prove reliance using classwide evidence . . . . by using a classwide inference." Add. 95.[6]

The court similarly erred when it concluded that Plaintiffs could show "classwide" RICO injury under their theory that consumers were "forced" to "buy more EpiPens." Add. 87 n.45. There is no classwide injury where more than half the class—according to Plaintiffs' own expert—is unquestionably uninjured. Pet. 22.[7] This is not a "dispute between experts," Pls.' Resp. 24; it is manifest error.

Lastly, the court manifestly erred by certifying two classes alleging that Petitioners improperly sold EpiPen devices in two-packs and foreclosed competition—without analyzing whether either claim satisfied Rule 23. They plainly do not. Pet. 17-18. As the court acknowledged, Plaintiffs' experts conceded that up to two-thirds of Plaintiffs—well over a *million* people—are uninjured under the "two-pack" and "foreclosure" claims. Add. 68 n.38 ("between 41% and 71% of consumers" uninjured by supposed foreclosure); Add. 168

---

[6] Petitioners do not "concede" that causation can be shown through "group coercion." Pls.' Resp. 23. The District Court did not reach that issue.

[7] Plaintiffs' assertion (at 25) that they can (allegedly) show injury to *some* Plaintiffs is beside the point; they cannot show injury to *two-thirds* of consumers.

("65%" uninjured by two-pack claim). These uninjured plaintiffs do not have standing to bring an individual suit raising those claims. *See Town of Chester v. Laroe Estates*, 137 S. Ct. 1645, 1650 (2017). Nor could a class be certified raising solely a two-pack or foreclosure claim, given the number of uninjured plaintiffs. Plaintiffs do not dispute either point.

Yet Plaintiffs maintain, and the court agreed, that if Plaintiffs satisfy Rule 23 for a *different* RICO and antitrust claim (related to alleged generic delay), they can litigate their two-pack and foreclosure claims as a class action. Pet. 17-18. That is not how it works. Rule 23 does not authorize plaintiffs to bring class claims they could not litigate individually. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011). Nor does it allow plaintiffs to tack on claims to a class action that do not meet Rule 23's requirements. This is a significant issue here—given the *hundreds of millions of dollars* in damages Plaintiffs seek on these bootstrapped claims—and a significant issue in class actions generally. *See Ferreras*, 946 F.3d at 186 (reversing certification where some class members were unaffected by alleged misconduct). This Court should reverse the District Court's manifestly erroneous ruling, which dramatically expands liability in class actions by requiring defendants to defend against claims that do not warrant certification.

\*    \*    \*

The opinion below was a lengthy order in a complex case, to be sure. But it applied the wrong standard. It resolved multiple circuit splits against Petitioners. And it committed "significant and readily ascertainable" errors. *Vallario*, 554 F.3d at 1264. To be very clear: A class action involving millions of members, and purporting to seek hundreds of millions of dollars in damages (before trebling), creates significant "hydraulic pressure" to settle regardless of the merits. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 164-165 (3d Cir. 2001). Legal errors of this number and magnitude should not be forced to await theoretical end-of-case review. The petition should be granted.

Respectfully submitted,

/s/ Catherine E. Stetson

March 30, 2020

CATHERINE E. STETSON
ADAM K. LEVIN
DAVID M. FOSTER
CAROLYN A. DELONE
KATHRYN M. ALI
KATHERINE B. WELLINGTON
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
cate.stetson@hoganlovells.com

BRIAN FRIES
LATHROP GPM
2345 Grand Boulevard, Suite 2200
Kansas City, MO 64108-2618
(816) 292-2000
brian.fries@lathropgpm.com

*Counsel for Mylan Petitioners*

RAJ S. GANDESHA
STEVEN LEVY
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200
rgandesha@whitecase.com

JOSEPH REBEIN
ELISABETH A. HUTCHINSON
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, MO 64108-2613
(816) 474-6550
jrebein@shb.com

*Counsel for Pfizer Petitioners*

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limitation of Tenth Circuit Rule 5.1 because it contains 2,597 words, excluding the parts of the reply exempted by Federal Rule of Appellate Procedure 32(f).

This reply complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in Times New Roman 14-point font.

/s/ Catherine E. Stetson
Catherine E. Stetson

*Counsel for Petitioners*

**CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTION**

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made pursuant to Tenth Circuit Rule 25.5;

(2) if required to file additional hard copies, the ECF submission is an exact copy of those documents; and

(3) the ECF submission has been scanned for viruses with the most recent version of a commercial virus-scanning program, Carbon Black Defense version 3.5.0.1523. The most recent update was March 30, 2020. According to the program, the digital submissions are free of viruses.

/s/ Catherine E. Stetson
Catherine E. Stetson

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the Court's CM/ECF system on March 30, 2020.

/s/ Catherine E. Stetson
Catherine E. Stetson

*Counsel for Petitioners*